UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA G. HERRERA, an individual, )<br><br>                    Plaintiff, )<br><br>     v. )<br><br>THOMAS GIAMPIETRO, an )<br>individual; MONSON-SULTANA JOINT )<br>UNION ELEMENTARY SCHOOL )<br>DISTRICT; and DOES 1-50, )<br>inclusive, )<br><br>                    Defendants. )<br><br>_____ ) | 1:09-cv-1466 OWW SKO<br><br>SCHEDULING CONFERENCE ORDER<br><br>Discovery Cut-Off: 9/22/11<br><br>Non-Dispositive Motion<br>Filing Deadline: 10/7/11<br><br>Non-Dispositive Motion<br>Hearing Date:  11/18/11<br>9:00 Ctrm. 8<br><br>Dispositive Motion Filing<br>Deadline: 10/24/11<br><br>Dispositive Motion Hearing<br>Date:  11/28/11 10:00 Ctrm.<br>3<br><br>Settlement Conference Date:<br>1/4/12 11:00 Ctrm. 8<br><br>Pre-Trial Conference Date:<br>1/9/12 11:00 Ctrm. 3<br><br>Trial Date: 2/28/12 9:00<br>Ctrm. 3 (JT-16 days) |

I.   Date of Scheduling Conference.

     July 2, 2010.

II.  Appearances Of Counsel.

     Howard Rice Nemerovski Canady Falk & Rabkin by Amy L. Bomse,

1

1  Esq., appeared on behalf of Plaintiff.

2       Stubbs & Leone by Katherine A. Alberts, Esq., appeared on

3  behalf of Defendants.

4  III.  Summary of Pleadings.

5       Plaintiff's Summary.

6       1.    This is an individual action brought by Plaintiff Maria

7  G. Herrera against Defendants Monson-Sultana Joint Union

8  Elementary School District ("District"), Thomas Giampietro, the

9  Superintendent of the District and the Principal of Monson-

10 Sultana Elementary School at the time of the events giving rise

11 to this action took place ("Giampietro"); and Does 1-50.

12 Plaintiff successfully advocated on three occasions with the

13 California Department of Education for two children - her son,

14 E.G., and another child, A.R.A. - to receive special education

15 services from the District.  Defendants retaliated against

16 Plaintiff by providing false information to the Housing Authority

17 of Tulare County, which led the Housing Authority to attempt to

18 evict Plaintiff and her family from their home.  Defendants

19 further retaliated by forcing Plaintiff's nephew, D.H., to

20 transfer out of the District.  Plaintiff is suing Defendants for

21 these acts of retaliation.

22      2.    Plaintiff is suing Defendant District under the

23 Americans With Disabilities Act, 42 U.S.C. § 12101, et seq., and

24 Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 792,

25 for retaliating against her due to her advocacy on behalf of E.G.

26 and A.R.A.

27      3.    Plaintiff is suing Defendant Giampietro under 42 U.S.C.

28 § 1983 for retaliating against her for exercising her

1  constitutionally-protected right to petition the government for
2  redress.

3      4.    Plaintiff sues Defendant Giampietro and Does 1-50 under
4  the Unruh Civil Rights Act, California Civil Code § 51, for
5  retaliating against her due to her advocacy on behalf of E.G. and
6  A.R.A.

7      5.    Plaintiff brings this action for compensatory,
8  statutory, and punitive damages, reasonable attorney's fees,
9  costs of suit, and such other and further relief as the Court
10 deems just and proper based on Defendants' unlawful conduct.

11     Defendants' Summary.

12     6.    Defendants refute Plaintiff's allegations of
13 retaliation.  Defendant Monson-Sultana Joint Union Elementary
14 School District ("District") is a one school elementary school
15 district, which does not have the money or resources to provide
16 its own special education services.  As such, the District is a
17 direct service district meaning that its special education
18 services and program are run and operated by the Tulare County
19 Office of Education.  While the District is ultimately
20 responsible for providing special education under the IDEA, the
21 County pays for, operates and oversees the day to day operations
22 of the special education programs provided to the District's
23 students.

24     7.    Plaintiff did file two California Department of
25 Education complaints against the District related to her son,
26 E.G.  Due to the District's status as a direct service district,
27 the County, not the District, paid for and provided any
28 compensatory education awarded to Plaintiff.

8.    The District had and has no knowledge of Plaintiff's assistance with the other student's complaint beyond serving as an interpreter for the other student's aunt during a meeting with Mr. Giampietro and a County employee, Victor Carillo.

9.    September 17, 2007 was Plaintiff's son's last day of school at the District.  Thereafter, Plaintiff and the IEP Team agreed to an independent study program through California Connections while E.G. awaited enrollment in the Cutler-Orosi District.

10.  Over a year later, Mr. Giampietro asked Mrs. Barragan to come to the school for a meeting to discuss her residence.  At this point, Mrs. Barragan's grandson, D.H., was entering the third grade and had been enrolled in the District since kindergarten using Plaintiff's in-district address.  Mrs. Barragan had submitted other paperwork to the District using this address, including D.H.'s registration for the free lunch program.  Mrs. Barragan had even used Plaintiff's address when she sought to transfer her grandson to the Dinuba Unified School District through an inter-district transfer.

11.  Around the beginning of 2008, the District began to realize that it was in jeopardy of losing some of its state funding through the class size reduction program.  The District received funding from the State to keep its kindergarten through third grade classes below a set enrollment.  However, the District was facing an impaction problem, i.e., its class sizes were getting too large.  Therefore, the District revised its inter-district transfer and residency policies and regulations. The District's Board approved these policy and regulation changes

**4**

1   through official Board action in April 2008.  Due to these new

2   policies and regulations, District staff began taking a closer

3   look at proof of residency at registration and the beginning of

4   the school year.

5        12.   Therefore, in August 2008 at the beginning of school,

6   as part of this new policy implementation and in order to lessen

7   the impaction of its K-3 classes, the District requested a

8   housing tenant list from the Tulare County Housing Authority to

9   verify the residency of all students claiming to live in the

10  Sultana Acres housing project.  This is where Plaintiff lived and

11  where Mrs. Barragan claimed to live with D.H.  However, Mrs.

12  Barragan was not on the approved tenant list for Plaintiff's

13  unit.  Therefore, Mr. Giampietro asked Mrs. Montemayor to call

14  Mrs. Barragan to arrange a meeting.

15       13.   Mrs. Barragan came to the school for the meeting and

16  Mr. Giampietro asked Mrs. Montemayor to serve as a translator.

17  First, Mr. Giampietro asked Mrs. Barragan if she lived in Sultana

18  Acres, to which she said yes.  When Mr. Giampietro pointed out

19  that she was not on the approved tenant list and therefore, could

20  not live there, Mrs. Barragan said it was okay because she lived

21  with her son and daughter-in-law during the week and paid them

22  $200 to do so.  When Mr. Giampietro said that was illegal, Mrs.

23  Barragan maintained that it was okay because she paid $200 rent.

24  Mrs. Barragan never admitted that she did not live with Plaintiff

25  or retract her story that she paid Plaintiff $200 rent.  Mr.

26  Giampietro requested that Mrs. Barragan enroll D.H. in his

27  resident school district, since he was not on the approved tenant

28  list and could not legally live in the Housing Authority unit and

1   therefore, was not a resident of the District.

2       14.   After the meeting, believing that Plaintiff and her

3   husband were receiving rent to sublet their public housing unit,

4   Mr. Giampietro wrote to the Tulare County Housing Authority to

5   inform them of this possibly illegal activity.  Therefore, Mr.

6   Giampietro's letter was not retaliation against Plaintiff.  E.G.

7   had not been enrolled in the District for almost a year.  Mr.

8   Giampietro's actions had nothing to do with E.G., his education

9   or Plaintiff's activities in filing CDE complaints against the

10  District.  Mr. Giampietro was enforcing the District's and the

11  State's residency requirements for enrollment in the District,

12  protecting the District's class size reduction funding and

13  reporting what he believed was illegal activity to the Housing

14  Authority.

15  IV.  Orders Re Amendments To Pleadings.

16      1.   The parties do not anticipate amending the pleadings at

17  this time.

18  V.   Factual Summary.

19      A.   Admitted Facts Which Are Deemed Proven Without Further

20  Proceedings.

21           1.   Plaintiff Maria G. Herrera is a natural person.

22           2.   Defendant Thomas Giampietro is a natural person,

23  and a resident of Tulare County, California.  At all times

24  relevant to the complaint, Giampietro was the District's

25  Superintendent and the Elementary School's Principal.

26           3.   Defendant Monson-Sultana Joint Union Elementary

27  School District ("District") is a public school district and a

28  public entity organized and existing under the laws of the State

                                6

1  of California.

2       4.   In August 2003, Plaintiff's son, E.G., enrolled as
3  a kindergartener at Monson-Sultana Elementary School ("the
4  Elementary School"), an elementary school organized under the
5  authority of the District.

6       5.   At some point in the beginning of the 2003-2004
7  school year, E.G.'s teacher, Ms. Banda, and another District
8  employee, Melissa Valdez, met with Plaintiff and, during this
9  meeting, Ms. Banda suggested that Plaintiff pull E.G. out of
10 kindergarten and enroll him the following year.

11      6.   In August 2004, Plaintiff re-enrolled E.G. as a
12 kindergartener at the Elementary School.

13      7.   During E.G.'s first grade year, Plaintiff
14 approached Giampietro to obtain a special education assessment
15 for E.G.

16      8.   Giampietro sent Plaintiff to Victor Carillo
17 ("Carillo"), an employee of the Tulare County Office of Education
18 Special Education Local Plan Area ("SELPA").

19      9.   Carillo is charged with assessing students to
20 determine if they are eligible for special education services.

21      10.  Plaintiff signed an assessment plan for E.G. on
22 February 23, 2006.

23      11.  On or about March 7, 2006, Carillo completed his
24 assessment of E.G.  This assessment supported the conclusion that
25 E.G. qualified for special education services.

26      12.  An IEP team meeting concerning E.G. was held on
27 May 19, 2006.  At this meeting, based upon the results of his
28 assessment and the input of team members including Plaintiff,

E.G. was found eligible for special education services with a disability of autism.  An IEP was created for E.G. which called for him to be included in a regular education classroom while receiving accommodations to support this inclusion.  These accommodations largely took the form of a series of "Tips for working with [E.G.]" such as allowing him to take breaks during the day to stay regulated and to return to the classroom once he calmed down.  Plaintiff signed the IEP on that day.

13.   In the 2006-2007 school year, E.G. attended second grade at the Elementary School.

14.   On or about February 13, 2007, Plaintiff filed a compliance complaint ("First CDE Complaint") with the California Department of Education ("CDE") against the District.  In it, she alleged that the District had (a) failed to properly assess E.G., (b) failed to develop an IEP for him within legally-mandated time-frames, and (c) failed thereafter to implement the IEP.

15.   On April 13, 2007, following investigation, the CDE released its findings in response to the First CDE Complaint. The CDE determined that the District was out of compliance regarding Plaintiff's allegations (b) and (c).

16.   On or about February 2007, E.G.'s IEP team developed a new IEP for E.G.  In recognition of E.G.'s behavioral challenges, the IEP included a Positive Behavioral Intervention Plan ("PBIP").

17.   During March 2007, there were three incidents in which E.G. grew agitated in the classroom.  The third incident occurred on March 21, 2007.  At the conclusion of this incident, District personnel called the County Sheriff's Department and

**8**

1  E.G. was suspended for three days.  After that incident,

2  Plaintiff did not return E.G. to school for the remainder of the

3  2006-2007 school year.

4          18.  At an IEP meeting held on April 17, 2007, the team

5  agreed that E.G. would be educated at home through independent

6  study for the remainder of the school year.

7          19.  In August 2007, at the beginning of the 2007-08

8  school year, E.G. returned to the Elementary School as a full-

9  time student in the third grade.

10          20.  After an incident on September 17, 2007, Plaintiff

11  did not return E.G. to school.  He received one hour per day of

12  instruction on-campus and had one weekly session with the school

13  psychologist.  Plaintiff and the district agreed to this format

14  in an IEP amendment.

15          21.  On February 28, 2008, Plaintiff, with the help of

16  attorneys at Central California Legal Services, Inc., filed a

17  second compliance complaint with the CDE on behalf of E.G.

18  ("Second CDE Complaint").  The Second CDE Complaint alleged

19  numerous violations of state and federal education law by the

20  District and the SELPA during the period beginning on March 6,

21  2007 and ending September 18, 2007.

22          22.  In response to the Second CDE Complaint, two CDE

23  investigators visited Tulare County and interviewed at least five

24  District employees, including Giampietro; the Elementary School's

25  Vice-Principal, Bill Fulmer; E.G.'s former third-grade teacher,

26  Denise Bese; the school nurse, Shannon Coats; and former

27  classroom aide, Eren Ortiz.

28          23.  On May 2, 2008, after investigating the 15

1  allegations in the Second CDE Complaint, the CDE released its
2  findings, charging the District with seven violations of law.
3  The CDE awarded E.G. 36 days of compensatory education.

4       24.  On June 27, 2008, Plaintiff participated in an IEP
5  meeting via conference call with the relevant parties, including
6  Giampietro, who reported the District.  The meeting's purpose was
7  to determine the form that the 36 days of compensatory education
8  would take.

9       25.  Giampietro offered E.G. one hour per week of
10 tutoring for 36 weeks, which Plaintiff did not accept.  Instead,
11 the IEP team agreed that the CDE-ordered compensatory education
12 would be satisfied through 180 hours of tutoring services at the
13 Cullinan Education Center in Visalia, California.  The cost of
14 these services was $60 per hour.

15      26.  On or about January 2007, Giampietro and Carillo
16 met with Adriana Alvarez (with Plaintiff translating) to request
17 that Ms. Alvarez's niece, A.R.A., be assessed for special
18 education eligibility.  A.R.A. was not assessed.

19      27.  Ms. Alvarez filed a compliance complaint with the
20 CDE against the District for failing to initiate special
21 education assessment procedures for A.R.A. ("Alvarez CDE
22 Complaint").

23      28.  The CDE determined that the District was out of
24 compliance in failing to initiate special education assessment
25 procedures.  A.R.A. was ultimately assessed and found eligible
26 for special education services.

27      29.  Next year, A.R.A. enrolled as a first-grader in
28 Cutler-Orosi District.

1    30.   The 2008-09 school year began at the Elementary

2  School on or about Thursday, August 14, 2008.

3    31.   Plaintiff's nephew, D.H. attended the Elementary

4  School.  D.H. registered for school using Plaintiff's address,

5  although he actually lived with his grandmother in the

6  neighboring town of Cutler.

7    32.  District employee Rosemary Montemayor was well

8  aware of the close family relationship between Plaintiff,

9  Plaintiff's children, Ms. Barragan, and D.H., as shown by the

10  following:

11    a.   On several occasions, when D.H. was absent

12  from school, Montemayor telephoned Plaintiff and asked her

13  (Plaintiff) to get in touch with Ms. Barragan so that Ms.

14  Barragan could call the school office to explain D.H.'s absence.

15    b.   On days on which D.H. would go to Plaintiff's

16  home after school, Plaintiff would call Montemayor and ask that

17  D.H. be placed on the school bus to Plaintiff's home along with

18  Plaintiff's children.

19    c.   On days which Plaintiff's children would go

20  to Ms. Barragan's home after school, Plaintiff would call

21  Montemayor and let her know that her children would not be riding

22  the bus home from school.

23    d.   On several occasions when E.G. was suspended

24  or sent home early from school, Ms. Barragan would pick him up

25  from the school office, which Montemayor witnessed.

26    33.  On or about August 11, 2008, in response to a

27  request by the District, the Housing Authority of Tulare County

28  ("Housing Authority") sent the district a list of the names and

1  addresses of Housing Authority tenants residing within the

2  District boundaries.

3      34.  On or about August 22, 2008, Maria Barragan

4  (Plaintiff's mother-in-law and E.G.'s grandmother) received a

5  call from Montemayor, an Administrative Assistant with the

6  District.  Montemayor asked Ms. Barragan to come to the

7  Elementary School that day for a meeting with Giampietro.

8      35.  On August 22, Ms. Barragan met with Giampietro at

9  the Elementary School.  At the meeting, Giampietro spoke English

10  and Montemayor translated for Ms. Barragan, who spoke Spanish.

11  Giampietro asked Ms. Barragan if she lived with Plaintiffs in

12  Sultana, California.

13      36.  After his meeting with Ms. Barragan, Giampietro

14  wrote a letter to the Housing Authority stating that Plaintiff

15  was violating the terms of her lease.

16      37.  Defendant Giampietro told Plaintiff's nephew D.H.

17  to transfer out of Monson-Sultana Joint Union Elementary District

18  and enroll in his residential district.

19      B.   Contested Facts.

20      1.   Plaintiff was pressured by E.G.'s kindergarten

21  teacher and Giampietro to keep E.G. home for an extra year rather

22  than starting him in kindergarten when he was five years old.

23      2.   Around August 2004, Plaintiff began to have

24  concerns that her son suffered from autism.  She went to

25  Giampietro and told him that E.G. needed help, but Giampietro did

26  nothing.

27      3.   The District dragged its heels about getting

28  services for E.G. in the 2005-2006 school year.  The school

12

psychologist failed to assess E.G. for months after Plaintiff's request.  As a result of Defendants' delays, E.G. received no special education services in kindergarten or first grade.

4.    In the 2006-2007 school year, school personnel regularly failed to follow E.G.'s IEP.  As a result, E.G. would often grow agitated, which in turn would result in classroom disruption.  The District consistently treated this as misbehavior by E.G. meriting discipline rather than recognizing it as behavior stemming from his autism.  School personnel also used dangerous interventions to control E.G. that are prohibited by SELPA rules.  The District repeatedly gave E.G. detentions, suspended him, or called Plaintiff to pick him up from school when his autism caused disruptions in the classroom.

5.    Plaintiff repeatedly requested IEP team meetings, at which she advocated for the team to revise E.G.'s IEP and for the District to follow E.G.'s IEP, rather than punish him for his autism-related behaviors.

6.    In March 2007, Plaintiff was forced to take E.G. out of the Elementary School for the remainder of the school year, because she feared for his safety.  The IEP team agreed that E.G. would be educated at home.

7.    At an IEP meeting held on April 17, 2007, Plaintiff requested that E.G. receive certain services at his grandmother Maria Barragan's home on days when Plaintiff was working.  Ms. Barragan lives in the neighboring town of Cutler, which is in a different school district.  Accordingly, the District arranged for the Cutler-Orosi Joint Unified School District ("Cutler-Orosi District") to provide E.G. with certain

13

educational services.  Plaintiff's request is reflected in the notes from the IEP meeting.  These notes are signed by Giampietro.

8.   For the rest of the school year, E.G. received home instruction services, some of which were provided by Cutler-Orosi District personnel at Ms. Barragan's home in Cutler, California.  The District provided Cutler-Orosi District with curricular materials and financially compensated Cutler-Orosi District for providing services to E.G. at Ms. Barragan's home.

9.   On September 17, 2007, another incident occurred in which E.G.'s autism behaviors disrupted the classroom. District personnel again failed to follow the procedures in E.G.'s IEP and PBIP.  When Ms. Barragan arrived to pick E.G. up from school, she found him with red marks on his neck, scratches on his chest, bruises on his forearms, and marks under one arm. Plaintiff did not return E.G. to school as a full-time student because she feared for his safety.

10.  District employees also interfered with Plaintiff's ability to find day care for E.G. by telling the day care operator that E.G. was "terrible."

11.  Beginning in January 2007, Plaintiff also assisted in obtaining special education services for anther student at the Elementary School, A.R.A.  Plaintiff translated for A.R.A.'s aunt and legal guardian, Adriana Alvarez, at a meeting with Giampietro and Carillo.  At that meeting, Giampietro and Carillo refused Ms. Alvarez's request to assist A.R.A., because they claimed that Ms. Alvarez was not A.R.A.'s parent and therefore could not refer her for assessment.  Thereafter, Plaintiff assisted Ms. Alvarez to

1  prepare a complaint with the CDE for the District's failure to
2  initiate special education assessment procedures for A.R.A.   The
3  District was aware of Plaintiff's role in the Alvarez CDE
4  complaint.

5         12.   Defendants took actions to retaliate against
6  Plaintiff for her advocacy on behalf of her son and also on
7  behalf of another student at the Elementary School, including (1)
8  writing a letter to the County's Housing Authority falsely
9  alleging that Plaintiff was violating her lease by subletting to
10  Ms. Barragan; (2) causing a District employee to call the Housing
11  Authority to report that D.H. was claiming to reside with
12  Plaintiff; and (3) forcing Plaintiff's nephew to transfer out of
13  the Elementary School to the Cutler-Orosi District.   Defendants
14  have also taken other adverse actions against Plaintiff and/or
15  her family in retaliation for her exercise of education rights.

16         13.   Giampietro, who wrote the letter to the Housing
17  Authority, knew that the letter was false, because D.H.'s
18  grandmother and legal guardian, Ms. Barragan, admitted to
19  Giampietro that she and D.H. did not live with Plaintiff.

20         14.   The District had known for years that D.H. lived
21  with Ms. Barragan in Cutler, California and yet took no action
22  until after Plaintiff filed her two CDE complaints.

23         15.   D.H. had been enrolled in the District's free
24  school lunch program since he began attending the Elementary
25  School during the 2006-2007 school year.   D.H.'s address on all
26  documents submitted to the District in support of his enrollment
27  in the free school lunch program showed Ms. Barragan's home
28  address in Cutler, California.

1         16.   On or about February 2, 2008, in response to a

2 request by the District, the Housing Authority sent the District

3 a list of the names and addresses of Housing Authority tenants

4 residing within District boundaries.  Neither Ms. Barragan's nor

5 D.H.'s name appeared on this list.

6         17.   Giampietro's letter and/or the student record

7 and/or the telephone call led directly to an attempt by the

8 Housing Authority to evict Plaintiff and her family from their

9 residence.

10        18.   D.H.'s removal from the District and abrupt change

11 of school and environment has led to a number of significant and

12 previously-unseen behavior issues, for which he has been referred

13 to the Tulare County Children's Mental Health program.

14        19.   As a direct and proximate result of the District's

15 actions, Plaintiff has suffered injury, loss, and/or damage in

16 that:

17        a.   She experienced humiliation, hardship,

18 anxiety, indignity, feelings of powerlessness, and severe mental

19 and emotional anguish at the prospect that her family, which

20 includes a then one-year-old child, might lose its eligibility

21 for public housing; and

22        b.   She has experienced and continues to

23 experience guilt, hardship, anxiety, feelings of powerlessness,

24 and severe mental and emotional anguish due to the difficulties

25 and trauma that D.H., an eight-year-old, has faced as a result of

26 his forced transfer to Cutler-Orosi District.

27        20.   Defendants acted knowingly, willfully, and

28 maliciously, and with reckless and callous disregard for

16

1   Plaintiff's federally protected rights.

2         21.   At an IEP meeting for E.G., an employee of Cutler-
3   Orosi District told Plaintiff that the District had recommended
4   to a number of parents of disabled students eligible for special
5   education that they transfer their children to Cutler-Orosi
6   District rather than remain enrolled in the District.

7         22.   On or about January 2007, a District employee
8   recounted to Plaintiff a discussion that she had had with
9   Rosemary Montemayor in which Montemayor said "Mr. G [*i.e.*,
10  Giampietro] is going to have a hard time with her [i.e.,
11  Plaintiff] because this one is not stupid."

12  VI.   Legal Issues.

13        A.   Uncontested.

14        1.   Jurisdiction exists under 28 U.S.C. § 1331, 42
15  U.S.C. § 12101, et seq., 29 U.S.C. § 794, and 42 U.S.C. § 1983.
16  Supplemental jurisdiction is invoked under 28 U.S.C. § 1367.

17        2.   Venue is proper under 28 U.S.C. § 1391 and 28
18  U.S.C. § 1343.

19        3.   Plaintiff filed a claim with Defendant District
20  under Cal. Gov. Code § 910 on February 20, 2009.

21        4.   For the supplemental claims, the substantive law
22  of the State of California provides the rule of decision.

23        B.   Contested.

24        1.   Whether the District violated the Americans with
25  Disabilities Act, § 503 by retaliating against Plaintiff for
26  taking actions that are protected under the ADA.

27        2.   Whether the District acted knowingly, willfully
28  and maliciously and with reckless and callous disregard for

1    Plaintiff's federally protected rights under the ADA.

2              3.    Whether the District violated § 504 of the

3    Rehabilitation Act of 1973 and the regulations promulgated

4    thereunder by the United States Department of Education for

5    taking actions that are protected under the Rehabilitation Act.

6              4.    Whether the District acted knowingly, willfully

7    and maliciously and with reckless and callous disregard for

8    Plaintiff's federally protected rights under the Rehabilitation

9    Act.

10              5.    Whether Giampietro, in his individual capacity,

11   violated 42 U.S.C. § 1983 by retaliating against Plaintiff and/or

12   her family for engaging in activity protected by the First and

13   Fourteenth Amendments of the United States Constitution.

14              6.    Whether Giampietro acted knowingly, willfully and

15   maliciously and with reckless and callous disregard for

16   Plaintiff's federally protected rights under the United States

17   Constitution.

18              7.    Whether Giampietro and Does 1-50 violated

19   California Civil Code § 51 by violating Plaintiff's rights under

20   the ADA.

21              8.    Whether Giampietro and Does 1-50 acted knowingly,

22   willfully and maliciously and with reckless and callous disregard

23   for Plaintiff's federally protected rights under the ADA.

24              9.    Whether Plaintiff can prove sufficient facts to

25   state claims under the ADA, § 504, § 1983 and California Civil

26   Code § 51 upon which the relief she seeks can be granted by this

27   Court.

28              10.   Whether Plaintiff's alleged injuries were

18

1  proximately caused by parties other than Defendants, including,
2  but not limited to, Plaintiff herself or persons from whom
3  Defendants are not legally liable.

4          11.   Whether Plaintiff failed, in whole or in part, to
5  mitigate her alleged damages.

6          12.   Whether Plaintiff exhausted all necessary
7  administrative and/or judicial remedies available to her?

8          13.   Whether there exists a legitimate non-
9  discriminatory business reason for the action taken with respect
10  to Plaintiff as identified in the Complaint.

11         14.   Whether Plaintiff's action is barred by the
12  applicable statute of limitations.

13         15.   Whether Plaintiff's action and/or claims are
14  barred by her failure to satisfy all the requirements of the
15  California Government Claims Act.

16         16.   Whether Plaintiff's action and/or claims are
17  barred because each Defendant's conduct was privileged and/or
18  justified.

19         17.   Whether Defendants are immune from liability based
20  on the qualified good faith immunity available under both Federal
21  and California law.

22         18.   Whether the imposition of punitive damages against
23  Defendant Giampietro in this action would deprive Defendant of
24  his property and would constitute a criminal fine or penalty
25  without due process of law and equal protection under the
26  California and U.S. Constitutions.

27         19.   Whether Plaintiff can prove sufficient facts to
28  sustain a claim for punitive damages.

                              19

1          20.   Whether Defendants are immune from liability based

2   on the immunity provisions of California Government Code,

3   including but not limited to §§ 818.2, 818.4, 818.8, 820.2,

4   820.4, 820.8, 820.9, 821, 821.6, and 822.2, and California Civil

5   Code § 47.

6          21.   Whether Plaintiff's action and/or claims are

7   barred by the doctrine of waiver and estoppel.

8          22.   Whether Plaintiff has standing to seek the relief

9   she is seeking.

10  VII. Consent to Magistrate Judge Jurisdiction.

11      1.   The parties have not consented to transfer the

12  case to the Magistrate Judge for all purposes, including trial.

13  VIII.      Corporate Identification Statement.

14      1.   Any nongovernmental corporate party to any action in

15  this court shall file a statement identifying all its parent

16  corporations and listing any entity that owns 10% or more of the

17  party's equity securities.  A party shall file the statement with

18  its initial pleading filed in this court and shall supplement the

19  statement within a reasonable time of any change in the

20  information.

21  IX.  Discovery Plan and Cut-Off Date.

22      1.   The parties shall make their Rule 26 initial

23  disclosures on or before July 23, 2010.

24      2.   The parties are ordered to complete all non-expert

25  discovery on or before June 24, 2011.

26      3.   The parties are directed to disclose all expert

27  witnesses, in writing, on or before July 22, 2011.  Any rebuttal

28  or supplemental expert disclosures will be made on or before

1  August 22, 2011.  The parties will comply with the provisions of

2  Federal Rule of Civil Procedure 26(a)(2) regarding their expert

3  designations.  Local Rule 16-240(a) notwithstanding, the written

4  designation of experts shall be made pursuant to F. R. Civ. P.

5  Rule 26(a)(2), (A) and (B) and shall include all information

6  required thereunder.  Failure to designate experts in compliance

7  with this order may result in the Court excluding the testimony

8  or other evidence offered through such experts that are not

9  disclosed pursuant to this order.

10      4.    The parties are ordered to complete all discovery,

11  including experts, on or before September 22, 2011.

12      5.    The provisions of F. R. Civ. P. 26(b)(4) shall

13  apply to all discovery relating to experts and their opinions.

14  Experts may be fully prepared to be examined on all subjects and

15  opinions included in the designation.  Failure to comply will

16  result in the imposition of sanctions.

17  X.    Pre-Trial Motion Schedule.

18      1.    All Non-Dispositive Pre-Trial Motions, including any

19  discovery motions, will be filed on or before October 7, 2011,

20  and heard on November 18, 2011, at 9:00 a.m. before Magistrate

21  Judge Sheila K. Oberto in Courtroom 8.

22      2.    In scheduling such motions, the Magistrate

23  Judge may grant applications for an order shortening time

24  pursuant to Local Rule 142(d).  However, if counsel does not

25  obtain an order shortening time, the notice of motion must comply

26  with Local Rule 251.

27      3.    All Dispositive Pre-Trial Motions are to be

28  filed no later than October 24, 2011, and will be heard on

1  November 28, 2011, at 10:00 a.m. before the Honorable Oliver W.

2  Wanger, United States District Judge, in Courtroom 3, 7th Floor.

3  In scheduling such motions, counsel shall comply with Local Rule

4  230.

5  XI.  Pre-Trial Conference Date.

6      1.   January 9, 2012, at 11:00 a.m. in Courtroom 3, 7th

7  Floor, before the Honorable Oliver W. Wanger, United States

8  District Judge.

9      2.   The parties are ordered to file a Joint Pre-

10 Trial Statement pursuant to Local Rule 281(a)(2).

11     3.   Counsel's attention is directed to Rules 281

12 and 282 of the Local Rules of Practice for the Eastern District

13 of California, as to the obligations of counsel in preparing for

14 the pre-trial conference.  The Court will insist upon strict

15 compliance with those rules.

16 XII. Motions - Hard Copy.

17     1.   The parties shall submit one (1) courtesy paper copy to

18 the Court of any motions filed.  Exhibits shall be marked with

19 protruding numbered or lettered tabs so that the Court can easily

20 identify such exhibits.

21 XIII.  Trial Date.

22     1.   February 28, 2012, at the hour of 9:00 a.m. in

23 Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger,

24 United States District Judge.

25     2.   This is a jury trial.

26     3.   Counsels' Estimate Of Trial Time:

27          a.   16 days.

28     4.   Counsels' attention is directed to Local Rules

of Practice for the Eastern District of California, Rule 285.

XIV. Settlement Conference.

1.    A Settlement Conference is scheduled for January 4, 2012, at 11:00 a.m. in Courtroom 8 before the Honorable Sheila K. Oberto, United States Magistrate Judge.

2.    Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

3.    Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship.  If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

4.    Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers, a confidential settlement conference statement.  The statement should not be filed with the Clerk of the Court nor served on any other party.  Each statement shall be clearly marked "confidential" with the date and time of the Settlement Conference indicated prominently thereon.  Counsel are urged to

1  request the return of their statements if settlement is not

2  achieved and if such a request is not made the Court will dispose

3  of the statement.

4      5.   The Confidential Settlement Conference

5  Statement shall include the following:

6          a.   A brief statement of the facts of the

7  case.

8          b.   A brief statement of the claims and

9  defenses, i.e., statutory or other grounds upon which the claims

10 are founded; a forthright evaluation of the parties' likelihood

11 of prevailing on the claims and defenses; and a description of

12 the major issues in dispute.

13         c.   A summary of the proceedings to date.

14         d.   An estimate of the cost and time to be

15 expended for further discovery, pre-trial and trial.

16         e.   The relief sought.

17         f.   The parties' position on settlement,

18 including present demands and offers and a history of past

19 settlement discussions, offers and demands.

20 XV.  Request For Bifurcation, Appointment Of Special Master,

21 Or Other Techniques To Shorten Trial.

22     1.   None.

23 XVI. Related Matters Pending.

24     1.   There are no related matters.

25 XVII.   Compliance With Federal Procedure.

26     1.   The Court requires compliance with the Federal

27 Rules of Civil Procedure and the Local Rules of Practice for the

28 Eastern District of California.  To aid the court in the

1  efficient administration of this case, all counsel are directed

2  to familiarize themselves with the Federal Rules of Civil

3  Procedure and the Local Rules of Practice of the Eastern District

4  of California, and keep abreast of any amendments thereto.

5  XVIII.    Effect Of This Order.

6      1.    The foregoing order represents the best

7  estimate of the court and counsel as to the agenda most suitable

8  to bring this case to resolution.  The trial date reserved is

9  specifically reserved for this case.  If the parties determine at

10 any time that the schedule outlined in this order cannot be met,

11 counsel are ordered to notify the court immediately of that fact

12 so that adjustments may be made, either by stipulation or by

13 subsequent scheduling conference.

14     2.    Stipulations extending the deadlines contained

15 herein will not be considered unless they are accompanied by

16 affidavits or declarations, and where appropriate attached

17 exhibits, which establish good cause for granting the relief

18 requested.

19     3.    Failure to comply with this order may result in

20 the imposition of sanctions.

21

22 IT IS SO ORDERED.

23 Dated:    July 2, 2010                    /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE

24

25

26

27

28

25